ALBERTA HENCKEN et al., Claimants, *v.* STATE OF NEW YORK, Defendant.   (Motion No. 1576.)

*Court of Claims, July 14, 1949.*

*Harold Hyman* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Howard F. Danihy* of counsel), for defendant.

LAMBIASE, J. This is an application by the above-named Alberta Hencken and Alfred Hencken, who are husband and wife, for permission, pursuant to subdivision 5 of section 10 of the Court of Claims Act, to file a claim against the State of New York. It appears that they have heretofore jointly filed a notice of intention to file a claim and also a claim against the State of New York, both of which, concededly, were filed late with the clerk of this court and were served late upon the Attorney-General of the State of New York, and each of them on this application asks to be allowed to withdraw said claim.

It is submitted by the claimants that they have brought themselves within the permissive provisions of the first above-mentioned section and subdivision, and that in the exercise of the discretion therein provided, we should grant their application. Let us consider the claimants' position.

It is alleged in the proposed claim forming part of the moving papers herein that:

" 2. The claim of Alberta Hencken is for negligence of the State of New York, and the Long Island State Park Commission in the operation, management, and control by it, or them, by their servants, agents, or employees of the roller skating rink at Jones Beach, New York, on May 28, 1948, at or about 10:30 P.M., in that while Alberta Hencken was lawfully and properly skating, and having paid the usual admission fees therefore, she was caused to trip, be tripped, and fall, by reason of the fact that certain persons who were then skating in and about said roller skating rink, were doing so in a dangerous and improper manner; that such improper acts and method of skating and activities while skating on the part of these other persons were known to the State of New York and the Long Island State Park Commission, by its servants, agents or employees, in that such acts, dangerous to other persons on the said skating rink had been going on for some period of time, and that such persons

had been cautioned on such other occasions that evening, but that such persons were not removed or directed to withdraw from said rink, and that such improper skating and dangerous acts if not known to the State of New York, and the Long Island State Park Commission, by their servants, agents or employees, by careful observation and of the ordinary care in the maintenance of the said rink, they would have known or should have known that such skating was improper. That skating in such a dangerous manner, as aforestated, the said person or persons ' cut off ' the said Alberta Hencken while she was skating in a careful and prudent manner, so as to cause her to swerve sharply from the path of the other skaters, on the brick portion of the 'said rink or border at the edge of the rink, which edge or border or brick portion of said rink contained groves [sic; grooves] so as not to permit smooth or proper skating, thereupon and thereby cause the skates of the said Alberta Hencken to run into one of said groves; that said brick border was thereupon maintained, operated and managed in an improper manner; that by reason of the foregoing, the said claimant was caused to trip, was tripped and was caused to fall and to be injured as to her person in and about the right arm, hand and elbow.

" 3. The injuries sustained by Alberta Hencken are as follows: Right — elbow — wrist: A long oblique fracture of the distal end of the shaft of the humerus with a fracture line extending into the articular surface between the condyles and displacement of the distal fragment consisting of both condyles dorsally with overriding of the fragments. The distal end of the proximal fragment is near the level of the olecranon fossa of the ulna but is anterior to the ulna when seen from the lateral aspect. There has been fragmentation of the medial condyle and also of the epicondyle and these fragments are separated from the lateral condyle by an interval of about 3 to 4 mm. In the distal end of the radius there is a transverse fracture of the shaft about 1.5 cm. above the wrist joint with a dorsal angulation and displacement of the distal fragment together with the carpol bones. The distal fragment is comminuted.

" Severely comminuted fracture of the right elbow; treated by resection of the elbow joint and a long arm cast applied; treated by changes of plaster until September 16, 1948, when cast was removed; thereupon place [sic] on postural exercises of the shoulder and of the elbow. The right elbow is flail; just about able to initiate extension of the elbow.

" She was completely disabled until the first week of January, 1949, and has been constantly partially disabled since.

Her period of partial disability is permanent. She has sustained 100% loss of her elbow joint. On the basis of functional disability, 80% loss estimated.

" The injury was accompanied by and itself occasioned severe pain, suffering, and tremendous inconvenience.

" 4. The claim of Alfred Hencken is  *  *  * for loss of services, medical care, and doctor's bills, and loss of consortium, expended to this date and which he verily believes in order to effect a full cure if possible, he will be obliged to expend in the future in behalf of his said wife, Alberta Hencken  *  *  *.''
(Claimants' Proposed Claim, pars. 2-4.)

It is set forth in claimants' moving papers that the Long Island State Park Commission, the State agency having jurisdiction and control of Jones Beach where Alberta Hencken was injured, was advised of the particulars of said accident by letter written and sent to it by Alfred Hencken within a week or two from the date of the accident; and that employees of said park commission were in attendance at the time of the happening of the accident and rendered assistance to Alberta Hencken. It is urged by claimants that the State of New York has had, at all times since the happening of the accident, full knowledge of the facts concerning the accident. The State does not object to the granting of the relief herein asked for upon the ground that it lacks actual knowledge of said accident. On the contrary, the assistant attorney-general who argued the motion for the State stated in open court that the State did not deny that it had such knowledge. (S. M. 11, 12.) Under the circumstances herein, we are satisfied that the State of New York, or its appropriate department, had, prior to the expiration of the time limited for the filing of the notice of intention to file a claim herein, actual knowledge of the essential facts constituting the claim herein.

The State of New York does object, however, to the granting of the relief herein prayed for by the claimants on the ground that they have failed to present a reasonable excuse for their failure to file a claim or a notice of intention to file a claim within the time limited by the Court of Claims Act for the filing thereof. The application herein is addressed to our discretion and a reasonable excuse is essential. If, therefore, the position of the State be correct, this application must be denied.

The excuse which the above-named Alberta Hencken presents may be summarized by the following statement concerning her appearing in an affidavit (pars. 4-8 thereof) duly sworn to the 2d day of May, 1949, of one Charles J. Basile, M.D., her attend-

ing physician, which affidavit is part of the moving papers herein:

"4. In the first place she was under sedation for quite a long period of time after the accident and even after the application of the cast, because of pain occasioned by the occurrence and the inconvenience which naturally follows from the application of the cast and the necessity of carrying her arm in a certain set position, which was definitely uncomfortable.

"5. After the resection of the elbow and the application of the cast, except for the above mentioned inconvenience and pain, the patient was in a fairly co-operative frame of mind, and she apparently believed that the injury was a mere simple one, which would not result in any permanency, or permanent loss of use to the hand and arm. On or about June 9th, 1948, when the patient returned for a removal of the sutures and a change of cast, it was my duty to explain to her that in my opinion, she would have permanent disability in her right elbow, and that the extent of disability could not be determined at that time.

"6. From that time on, although, she attempted to be thoroughly co-operative in obtaining as good a result as was possible under the circumstances, the state of her mental condition, as was observed by me, caused me to keep her under mild sedations in an attempt to avoid a complete nervous break-down; this condition one of 'mental shock', related to her injury and prevailed until about the end of August 1948, at which time because of improvement in her elbow function there was marked improvement of her mental state.

"7. This improvement in her mental state improved to the extent that she began to evidence interest in her husband and child, and from that point on we were able to improve her mental status a great deal more, to the extent that even now, although she goes into an occasional state of mental depression, because of the extent of her injury and permanency thereof, at least it does not stay for any great period of time, as it did for approximately three whole months as afore-explained.

"8. In my opinion I do state, that during this entire period of mental shock, that such mental shock affected the patient's mental processes, to the extent that, she did not understand the nature of her acts with respect to the protection of her rights, and that her mental processes were, to some extent, with respect thereto, temporarily interfered with, and that her failure to respond to the request of her husband and her attorney to take steps to properly litigate her claim were occasioned by her

' mental shock ', which as I explained, lasted until the end of August 1948.''

While the circumstances presented on this application constituting Alberta Hencken's excuse for failure to timely file a claim or a notice of intention to file a claim appear to us to be most unusual and exceptional, we are of the opinion that upon the papers before us, and particularly upon the affidavit of Dr. Basile, excerpts from which we have hereinbefore set forth, a reasonable excuse has been presented to us by her for her failure to file her notice of intention to file a claim or her claim within the statutory period provided therefor. (*Toof* v. *State of New York,* 260 App. Div. 830, affd. 286 N. Y. 620; *Walden* v. *City of Jamestown,* 178 N. Y. 213; *Winter* v. *City of Niagara Falls,* 190 N. Y. 198.) We conclude, also, that the State of New York has not been substantially prejudiced by the failure of Alberta Hencken to file her claim or a notice of intention to file a claim within the time limited therefor.

The application of Alfred Hencken, however, presents a different situation than that of his wife. He was not injured. His reason for not having timely filed a claim or a notice of intention to file a claim is summarized in his affidavit, paragraph 4, wherein he states, among other things: '' that having been present at the time of the occurrence, having seen the severe pain and suffering sustained by my wife as a result of this accident over a period of months, administering sedation to her and over a period of months attempting to lift her mind from the morbid state that it was in, both she and I have legitimate excuse or reason, reasonable in law, for having not filed our claims within the prescribed time.''

In our opinion, the reason presented by Alfred Hencken does not constitute, under the authorities, a reasonable excuse for his failure to timely file. (*Baronness* v. *State of New York,* 153 Misc. 212; *Schaeffer* v. *State of New York,* [Court of Claims, 1935] Claim #22338, Finding of Fact #14, Conclusion of Law II, affd. 247 App. Div. 833; *Tedesco* v. *State of New York,* 172 Misc. 851. [Court of Claims, 1939].) Although his cause of action is derivative to the extent that if his wife cannot recover, he cannot recover either (*Maxson* v. *Tomek,* 244 App. Div. 604, motion for leave to appeal to the Court of Appeals denied, 268 N. Y. 726), the excuse presented by his wife and accepted by us as being reasonable in her instance does not *ipso facto* enure to his benefit. (*Matter of Polk* v. *City of New York,* 188 Misc. 727; cf. *Pitrelli* v. *Cohen,* 257 App. Div. 845, revg. 169 Misc. 117.)

Therefore, his application for permission to file a claim herein must be and hereby is denied.

For the reasons hereinbefore stated, Alberta Hencken's application to file a claim herein is hereby granted upon condition that she file and serve said claim within thirty days after the entry of an order herein. Permission to withdraw her notice of intention to file a claim and her claim previously filed jointly with her husband, although late, is also hereby granted.

Reasonable excuse therefor not having been shown by Alfred Hencken, his application for permission to file a claim must be and hereby is denied.

There is no reason for keeping on the calendar of this court a claim which admittedly was filed late, and, therefore, the application of Alfred Hencken to be permitted to withdraw his claim heretofore filed late herein is hereby granted.

Submit order.